By the Court.*—Robertson, C. J.
On the argument of the appeal in this case, as well as on the argument before me at special term, the counsel on both sides took for granted that an order made, ex parte, to appoint a referee to examine witnesses for the purpose of using them examination on a motion, was regular; that the adverse party was entitled to no notice of the examination, and if he attended could only do so to *126 watch the proceedings, and take advantage of any unfairness or irregularity in conducting the examination. The learned counsel for the plaintiffs,'on such assumption directed his arguments mainly against the consequences of an indiscreet grant of such a power, and the danger of its abuse. He assumed that the only check upon evils which he vividly and minutely portrayed as resulting from such grant lay in án application, as in cases of other ex parte orders, to revoke it as indiscreetly given, and in other applications from time to time to regulate any disorders accruing in the exercise of such authority. He also found in the possible occurrence of such supposed evils, a ■limitation upon the discretion of the court in granting the order which is not expressly stated in the provision under which it was granted. ((7ode, §401.) The hmitation so grafted upon such provision was a restriction of the exercise of the authority to taking the testimony of witnesses respecting the main facts involved in a motion, to the exclusion of any facts merely tending to qualify or contradict any previous voluntary statement made by such witnesses, under oath, for the adverse party. This was based upon the assumption that the only defect intended to be remedied by the provision of the code permitting such a proceeding (§ 401), was an inability to procure the deposition of a witness to such main facts when he knew them; while the evil of wholesale statements made by willing witnesses of such main facts in favor of one party, without any possibility of showing by them qualifying circumstances, although entirely within the knowledge of the same witnesses, or establishing them ignoranee or prejudice, would remain unabated ; in other words, that the pleasure of the witness, not the authority of law, should determine how much of the truth should be furnished by witnesses in disposing of the rights of parties. No such distinction is apparent in the language of the provision, which is broad enough to redress such evil as well as supply such defect. Nór is there any good reason for such distinction or for supposing that it was intended to be recognized by the original provision adopted -in 1880 (2 R. S., 554, §§ 24, 25), by the revisers of the statutes.
Prior to the adoption of such provision in the Revised Statutes, it had been settled by the case of Bacon v. Magee (7 *127 Cow., 515), that the supreme court could not coerce the making of an affidavit’ to be used on a motion. The learned reporter suggested in a note to that case (p. 517, n.a.), that the necessary testimony could be obtained on a feigned issue. The revisers in their notes to the two sections containing such provision, after referring to such case, say: “ There are now no provisions- of law to compel depositions in such cases, and the only mode in which testimony can be compelled is to award a feigned issue; a tedious and expensive proceeding, not at oil adapted to the exigency of those cases to which the preceding sections are applicable.” It is very evident therefore that the revisers intended by-such sections to accomplish all that a feigned issue in the way of obtaining testimony, by means more adapted to the exigency, and with less delay and expense. This would clearly not be done, if the duties of the Commissioners appointed under such provision were confined to simply swearing a witness to a prepared affidavit, or taking down his answers to questions on one side and leaving the other to make a new application to the court for another commission to examine the witness, in order to procure statements qualifying those made by him on such first examination. Certainly such a proceeding could have little in common with a trial, such as that of a feigned issue, and would admit the evil of the private preparation of affidavits, by excluding the adverse party and his counsel from being present at the examination, unless he accidentally acquired knowledge of it.
The law, it is true, has not always been so apprehensive of evils likely to arise from an ex parte grant of authority to examine witnesses, without notice either to them or any one interested to prevent such examination or to intervene in it, or so chary of the tenor or fearful of the danger to witnesses by such examination of them, without such prior hearing, and in the absence of all persons adversly interested, as in all cases to require such notice or the presence of parties having adverse interests.
A conditional examination of a witness may be ordered without hearing the adverse party (2 R. S., 392, § 23), which is in the discretion of the judge ordering it. But the compulsory examination of a person having property of or indebted to a *128 judgment debtor may be had without notice to the debtor (Code, § 294; Sherwood v. Buffalo & N. Y. C. R. R. Co., 12 How., 137), as may also that of a witness to a deed on whose testimony so taken, it may be recorded or read in evidence on a trial, and neither the grantor nor any one else is entitled to notice (2 R. S., 758, §§ 13, 14). Every imaginable evil likely to arise either from an ex parte grant of a right -to examine a witness for a motion or from his examination, without the presence of any one having an interest adverse to the examining party, could equally well occur in such licensed cases. And indeed so far as the witness himself is concerned, even if the examination were confined to only the main facts involved in a motion, and did not extend to those explanatory of or qualifying a former deposition, the evil would be the same. Any restriction upon the application of such provision, or the grant or exercise of authority under it, is therefore not to be found in the mere apprehension of conceivable mischiefs.
Notice to the adverse party of the application for the appointment of a referee to take testimony, to be used on a motion, of course would remove all objections to the grant of such orders, as the court could, if it thought proper,'limit the referee as to the matters to be enquired into. A discretion is vested by statute expressly in every judge of a court of record, who grants an order for the examination of a witness, who is sick, infirm, or about to leave the state, to be used on a trial, either to order the examination ex parte before ■himself or require the opposite party to shew cause why it should not be taken before a referee. The limit of time of the examination is to be twenty days or “ as much shorter as the exigency of the case and the residence of the adverse attorney toill allow, in order to afford sufficient opportunity to attend such examination.” And it would appear that the opposite party might prove want of sufficient notice or of fairness in conducting the examinations to prevent the deposition from being read (Jackson v. Kent, 7 Cow., 59), provided he appeared before the officer and objected on those grounds.
I apprehend that the provision of the Revised Statutes in reference to taking the testimony of witnesses for a motion, intended to leave the same discretion with the court either to *129 make the order absolutely in the first place, or an order to shew cause, or require notice of motion, being governed by the same considerations as in the conditional examination of a witness for a trial as to “the circumstances of the case requiring such examination to be made in order to do justice to the parties,” and adopting the time of notice of the examination to the exigency of the case, and the distance of the residence of the attorney of the opposite party. After the order is made, even ex parte, no mere form of defects in the affidavits on which it was made, should prevent the depositions from being-used (Sheldon v. Wood, 2 Bosw., 268), more especially as neither such provision, nor that of the Code prescribes what such affidavits shall contain. The court, in the present case, may have seen in the affidavits themselves, on which the injunction was granted, the necessity of a cross-examination, and in the danger arising from delay in procuring it, reason for granting the order ex parte, particularly as the plaintiffs would be fully protected by attending the examination and re-examining the witnesses.
I have no doubt of the right of the plaintiff to notice of the examination, and to cross or re-examine the witnesses produced. Such notice is not expressly required, even by the statute for the conditional examination of witnesses (ante), when a referee is appointed, and yet it is held to be necessary (Wate v. Whitney, 7 Cow., 69). There is no reason why such a case should be an exception to the general rule of the right of both parties to be present at any examination of witnesses whose testimony is to affect their interest in the action. The provision in the Revised Statutes (vol. 2, 554, § 25), requires a Commission to be issued, and such witness to testify before the Commissioner “in the same manner as before referees and with like effect.” The modification of that in the Code (§ 401), requires him “ to attend and make an affidavit before the referee, the same as before a referee to whom it is referred to try an issue.” This is of course not confined merely to administering an oath, since a per diem allowance is given to the referee for such service. It is true the term “affidavit” is used, but “ deposition ” had been employed just before, and both evidently meant the same thing as the “ testimony ” of *130 the witness, required by the provision of the Revised Statutes, to be taken. The referee acts as a judicial officer does on the trial of an issue, and not merely ministerially, he is bound to exclude irrelevant testimony and note objections and exceptions if made (Gibson v. Pearsall, 1 E. D. Smith, 90). The adverse party is not driven to a new application to re-examine the same witness, to. prove circumstances tending to modify those testi-) fled to by him on such first examination, but may cross-examine him, indeed his neglect then to examine him would be a good ground for refusing such application. It is only in that "way the witness could be examined as on a trial before a referee or the trial of a feigned issue, thereby avoiding delay and expense, which were declared by the revisers to be the original and primary object of such a provision.
Even if the order had been irregularly granted ex parte in this case, the plaintiffs cannot ask to have it set aside, because they have not specified such defect either in the order to show cause (Gen. Rule, 39), or in their motion papers (Blake v. Lacy, 6 How., 108). There is no direct assertion in any of them that it was granted ex parte or without notice. Every word in the affidavit of the attorney for the plaintiffs may be true, and such notice may still have been given. The only technical irregularity suggested therein is the omission to file the affidavits in the clerk’s office, and enter the" order on his minutes which is disproved. Any such objection was also waived by the attendance of the attorneys for the plaintiffs, on two different days; on the examination, one of them, as stated by the attorney for the defendants, and not contradicted, on one occasion procuring modifications or amplifications of the statements of witnesses, and the other of them on another occasion leaving after stating that he would rely on the referee to take down the answers fairly. The attorneys for the plaintiffs knew at that time how the order was obtained and what it was, for one of them states in his affidavit, that it was obtained from a judge of the court, based upon a pretended refusal of certain persons, who had made affidavits for the plaintiffs, to moke affidavits for the defendants, necessary to be «sed on a motion, and appointed a referee (whom he named) to take the depositions of such persons. The attorney for the defendants states in his *131 affidavit, in which he is uncontradicted, that on being asked several weeks previous, he informed one of the attorneys for the plaintiffs of the nature of the orders, in answer to an inquiry caused by a notice of them in public newspapers. The same attorney for the plaintiffs admits that he saw subpoenas served on witnesses which were signed by such referee as such, and yet he waited four days afterwards, two examinations occurring intermediately, before moving in the matter. The motion was evidently made too late on that ground. (Rushmore v. Hall, 12 Abb., 420.)
The order to shew cause did not specify what part of the depositions were taken by the referee, by putting questions himself, so that if it were an irregularity, such part could be suppressed. The mere putting of questions by bim was not an irregularity, on the contrary, in many cases it would often be more proper to have it so done. The circumstances under which he did it are fully explained, and although he did so, it was evidently not so done merely to favor either party, except to facilitate the writing of the deposition. If he had refused to put questions for the other side, there might be grounds for charging partiality. If judicial officers are to be arraigned for putting questions favorable to either side, it would deprive them of the power of putting any. It is very evident the charge of the referee was made with the consent of the defendants to remove all suspicions of unfairness, and not upon the ground that he was convicted of partisanship, since costs were given on the denial of the motion.
The orders appealed from should therefore be affirmed with costs.

 Present—Robertson, Oh. J., and Barbour and Gabtin, JJ.